THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELIZABETH C. JAY, Landlord, v. WILLIAM H. BENNETT and others, Tenants, and HENRY DRALLE and others, Under-tenants.

*Lease — prohibition of sale of intoxicating liquors — increase of rent, if they are sold on premises — validity of agreement for.*

Where a lease prohibits the sale of intoxicating liquors on the demised premises, and it is further covenanted and agreed by the parties thereto that in case intoxicating liquors are sold, the lessor shall have the privilege of dispossessing the lessee and those holding under him, or of collecting from them double the annual rent specified in the lease, and in case of their failure to pay such increased rent, to dispossess them for non-payment thereof, such agreement for an increased rent in case the premises are used for such forbidden purpose, is legal and valid, and in case the lessees, or those holding under them, refuse to pay the same, they may be dispossessed by summary proceedings.

CERTIORARI to review summary proceedings for the removal of tenants.

This proceeding was brought in the Second District Court to dispossess the defendants by summary proceedings under the following circumstances:

By lease dated 26th March, 1877, Miss Jay leased the premises in question to the defendants, Bennett and Abrahams, for five years, from May 1, 1877, with the privilege of a renewal of fifteen years, at the yearly rent of $2,600, payable quarterly.

The lease required the tenants to pay all the taxes and assessments, and also contained the following clause: "It being clearly and distinctly understood, however, that at no time shall it be allowed to sell intoxicating liquor on the premises.

And it is hereby expressly covenanted and agreed by and between the parties hereto, that in case intoxicating liquor shall be sold in or upon the premises or any part thereof, that the party of the first part, her heirs, executors, administrators and assigns, shall have the option thereupon either to dispossess the party of the second part and those holding under him, or to charge and collect from the party of the second part, his executors, administrators or assigns, thereafter during the remainder of the term of lease, annual rent in double the amount then payable, and for

failure to pay the same, to dispossess the party of the second part and those holding under him, and into the premises again to enter, which double rent is to be construed as liquidated damages for breach of covenant aforesaid."

It was provided in the lease that the reference to the parties of the second part in the singular should be considered as made in the plural.

Intoxicating liquor was habitually sold upon the premises, and, as appears by the proof, in June, August and October, 1877.

On November 1st, 1877, Miss Jay demanded double the rent, viz.: $1,300, and no part of it being paid, brought this proceeding.

Her affidavit on which the summons was issued, also set up that the taxes of 1877, amounting to $715.50, became a lien on the premises on the 9th of October, 1877, and that the tenants had neglected to pay them, and that the defendants Lasalle and Meunier claimed an interest in the premises as mortgagees.

Upon the trial, all of the facts stated in the affidavit of the landlord were proved, except that the court excluded all evidence as to the taxes, holding that taxes could not become rent so as to warrant summary proceedings.

The justice dismissed the proceedings upon the ground that the amount of $1,300 demanded by the landlord was liquidated damages and not rent, and would not support summary proceedings.

*Lewis L. Delafield*, for the relator.

*James R. Adams* and *William F. Pitshke*, for the respondent.

Davis, P. J.:

The case of *Plumb* v. *Tubbs* (41 N. Y., 442), is a strong case to show the right of the owner of lands, in disposing of them by grant, to prevent the sale of intoxicating liquors upon the premises by his grantee or his assigns. But without that, or any other authority, we see no reason in principle why the landlord, in demising his premises, may not impose rigid conditions to prevent the sale of intoxicating liquors, which he may regard as a moral evil or as injurious to himself or his property.

In this case, the owner of demised premises evidently intended, with strict care, to prevent the sale of intoxicating liquors by her tenants, or their under tenants, by imposing such consequences as would, in her judgment, be quite certain to secure that end. The yearly rent reserved by the lease was the sum of $2,600, for the first term of five years, payable in quarter yearly payments, on the first days of November, February, May and August; but in respect of the rent to be paid, she caused to be inserted a provision by which the reserved rent should be doubled in case of the sale of intoxicating liquors upon the premises.

That provision was contained in the following clause of the lease: "it being clearly and distinctly understood, however, that at no time shall it be allowed to sell intoxicating liquor on the premises. And it is hereby expressly covenanted and agreed by and between the parties hereto, that in case intoxicating liquors shall be sold in or upon the premises, or any part thereof, that the party of the first part, her heirs, executors, administrators and assigns shall have the option thereupon either to dispossess the party of the second part, and those holding under him, or to charge and collect from the party of the second part, his executors, administrators or assigns thereafter during the remainder of the term of lease, annual rent in double the amount then payable; and for failure to pay the same to dispossess the party of the second part, and those holding under him, and into the premises again to enter, which double rent is to be construed as liquidated damages for breach of contract aforesaid."

The construction of these clauses of the lease seems to us to be very clear. After providing that at no time should it be allowed to sell intoxicating liquors upon the premises, the lease proceeded to declare the consequences and effect of a violation of that provision by declaring that if intoxicating liquors should be sold in or about the premises or any part thereof, the lessor should have her option either to dispossess the lessees and those holding under them, or to charge and collect thereafter during the remainder of the term annual rent in double the amount then payable, and for failure to pay the rent, to dispossess the party of the second part and those holding under him, and enter again into the premises. This gave to her, on a violation of the restriction against the sale

of intoxicating liquors, the right to treat the leases as forfeited and to dispossess the lessees and their under-tenants, or it gave her the right to claim rent at the rate of twice the amount then payable; and for the tenant's failure to pay the same, to dispossess him, and all holding under him and re-enter the premises for non-payment of rent.

She chose to demand the double rent, and the lease in effect became a demise of the premises for double the rent previously reserved, payable at the times and in the manner provided for in respect of the single rent. We see no good reason why parties may not agree that the rent shall be a given sum, payable at a given time and manner, unless the lessee violates some reasonable and proper restriction upon the use of the premises, and from the time of such violation that the rent shall be a greater sum payable in the same manner. A landlord may well be willing to rent his premises at one rate for a prescribed use, and wholly unwilling to rent them at the same rate for another, and to him obnoxious use. And in demising at the former rate we see nothing that should prevent the parties from agreeing that in case the premises are put to the obnoxious use, the rent shall be at a different and higher rate. In such a case, the moment the change in use is made, the change in the rent reserved by the lease occurs, and thereafter, if the lease so provides, the landlord is entitled to demand the increased rent and the defendant is bound to pay it. The rent reserved by the lease in this case had been paid at the single rate up to the first day of August, 1877.

Another quarter's rent matured on the first day of November following, and for that quarter the landlord demanded double rent under the provisions of the lease above referred to. She did this on the ground that the under-tenant Dralle had turned the portion of the premises occupied by him into a place for the sale of intoxicating liquors, and had been prior to and during that quarter engaged in selling intoxicating liquors in violation of the restrictions of the lease. On the hearing before the magistrate she produced evidence showing that as early as the month of May, and thenceforward, he had occupied and continued to occupy that part of the premises as a drinking saloon; and as the evidence stood before the magistrate, when the landlord's case was rested,

it would have been his duty, we think, to have found that intoxicating liquors had been sold in violation of the restrictions of the lease. Upon the happening of such an event, the tenants had covenanted to pay the higher rent demanded by the landlord for that quarter, and they had also expressly provided by the lease that for the non-payment of such rent the landlord might proceed to dispossess them from the premises. It is true that they had given to the landlord an option, which gave her other and higher rights, if she had chosen to exercise them; but they have no right to complain that she chooses to avail herself of their agreement to pay the increased rent, and to demand such rent, and to proceed under the Landlord and Tenant act to dispossess them for non-payment. That course gave to them some advantages that would not have existed had she chosen to pursue the other remedy.

The question is made that it is not provided that the double rent shall be paid quarterly, but that it being described as an annual rent it must be regarded as payable annually and at the close of each year. This construction cannot be sustained, because it is apparent that the intention was to substitute the double rent, as to the time of its payment and the consequences of non-payment, for the single rent reserved by the lease and payable quarterly as therein prescribed.

At the close of the landlord's case the proceedings were dismissed on certain grounds stated on behalf of the tenant; but we think, so far as those grounds are applicable to the questions above discussed, they are not well taken.

In respect of so much of the case as relates to the non-payment of taxes, which by the lease were to be treated as additional rent, the rulings of the judge were probably correct, because the affidavit did not sufficiently state any demand of the payment of such taxes; and without discussing the question, we are also inclined to think that the dispossession proceedings could not have been maintained in this case on the ground that such taxes had not been paid.

We are of the opinion that the proceedings before the magistrate were improperly dismissed, and that his order of dismissal and the judgment entered thereon should be reversed with costs;

and that the relator be at liberty to renew her proceedings before the same or any other magistrate.

Brady and Ingalls, JJ., concurred.

Judgment and order reversed with costs; relator to be at liberty to renew proceedings before the same or any other magistrate.